Fred C. STUCK, Appellant,

v.

STATE of Indiana, Appellee.

No. 480S90.

Supreme Court of Indiana.

June 10, 1981.

Harriette Bailey Conn, Public Defender, Carr L. Darden, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Cindy A. Ellis, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is an appeal from the denial of a petition for post-conviction relief. Appellant, Fred C. Stuck, was convicted of second-degree murder in 1969, and was sentenced to life imprisonment. The conviction and sentence were affirmed on appeal, *Stuck v. State*, (1970) 255 Ind. 350, 264 N.E.2d 611. Stuck filed his petition for post-conviction relief in 1975, and amended it in 1979. After a hearing on the petition the trial court denied relief.

Stuck raises these issues on appeal: 1) whether the trial court erred in determining that petitioner failed to prove his allegation of prejudicial pre-trial publicity; 2) whether the trial court erred in determining that the sentence imposed was neither unconstitutional nor in violation of statutes in effect at the time of sentencing; 3) whether the trial court erred in determining that petitioner failed to prove his allegation that his accomplice testified falsely at his criminal trial; and 4) whether the trial court erred in determining that petitioner failed to prove his allegation of ineffective assistance of counsel.

The State, in its answer to the petition and in its brief on appeal, has asserted waiver of the first three issues since appellant failed to raise them on direct appeal.

I.

Stuck asserts that the trial court erred in finding that he was not prejudiced by pre-trial publicity. At the hearing on his petition, Stuck introduced seventeen photocopies of newspaper articles from *The Lebanon Reporter* about pre-trial proceedings. The State objected to the admission of this evidence, arguing that the issue of prejudicial pre-trial publicity was not available in the post-conviction proceeding since it had not been raised on direct appeal and had therefore been waived. The trial judge allowed the evidence to come in, ruling that since ineffective assistance of counsel was

one of the allegations, the petitioner should be permitted to show that prejudicial pre-trial publicity had tainted his trial, raising the inference that his attorney failed to take appropriate action by seeking a second change of venue.

Stuck made no further showing on this allegation. On appeal he urges that the articles were patently prejudicial, that the criminal trial court erred in failing to interrogate the jurors collectively to determine if any of them had been exposed to the articles, and that the post-conviction court erred in its determination that the allegation was not proved.

In reviewing post-conviction findings of fact, we examine the evidence to see whether it "leads unerringly and unmistakably to a decision in [petitioner's] favor; that is, one opposite to that reached by the trial court." *Sotelo v. State*, (1980) Ind., 408 N.E.2d 1215. Applying this standard of review to the newspaper articles submitted as evidence, we cannot say that their content called for the conclusion that Stuck was denied a fair trial by prejudicial pre-trial publicity. Prejudicial pre-trial publicity is that which contains "inflammatory matter which would not be admissible at the defendant's trial, [or] mis-statements or distortions of the evidence given at trial." *Bruce v. State*, (1978) 268 Ind. 180, 375 N.E.2d 1042, 1064. Since all of the articles were published before the jury was selected we are concerned only with the first category. Stuck makes no claim that the articles contain inadmissible inflammatory matter and our examination of them reveals that they are nothing more than reports of motions and hearings, matters of public record, in the course of Stuck's progress through the preliminary stages of his trial. Since the content of the articles did not give rise to a substantial likelihood of prejudice, the trial court was under not duty to interrogate the jurors. *Id.* The finding of the trial court is sustained.

II.

Appellant's next assertion is that the court erred as a matter of law in determin-

ing that the sentence imposed on him was not improper. The petition alleged that the life sentence was cruel and unusual punishment under the federal and state constitutions, and in violation of the federal and state due process and equal protection clauses. He argues first that it was cruel and unusual for the sentencing judge to impose life imprisonment when the greater offense of first-degree murder carried, at that time, the same penalty. Burns Ann. Stat. § 10–3401 and § 10–3404 (1956 Repl.) In addition, he contends that the trial court erred in failing to instruct the jury about the alternate sentencing provisions of a new sentencing statute whose effective date was after the commission of the crime charged but before his trial began. The new statute set out the alternative of a life term or a term of fifteen to twenty-five years. Ind. Code § 35–1–54–1 (repealed). Finally, Stuck argues that under the new statute the jury was responsible for assessing the penalty, and the trial court usurped the jury's authority by determining the sentence.

■ The issue of the constitutionality of the sentence was not raised on direct appeal and the post-conviction trial judge apparently deemed it to have been waived. We note that appellate counsel's failure to raise it on appeal was not cited as one of the points supporting the petition's allegation of ineffective assistance of counsel. We agree that the issue was waived, but if the issue were properly before us, we observe that the claim has no merit.

■ In support of his first assertion that the penalty for second-degree murder is constitutionally required to be less than that for first-degree murder, Stuck cites *In re James*, (1966) 247 Ind. 339, 215 N.E.2d 863. Our reading of *James* reveals that for the purposes of appellant's case, it stands merely for the obvious proposition that second-degree murder was lesser, included offense of first-degree murder under the statute in effect when the crime occurred. We do not see in what way citation of *James* advances the argument. No cogent argument having been presented on this point, the issue is waived. Ind.R.App.P. 8.3(a). We observe, however, that the statue under which Stuck was sentenced provided for either the death penalty or life imprisonment for the greater offense of first-degree murder. The possible sentences for the different degrees of murder were therefore not the same but simply overlapping. The sentencing scheme currently in effect similarly yields the possibility of a sentence imposed, for example, upon conviction of a class B felony being the same as that imposed for a more serious class A felony. This only reflects the legislative intent that, even with prescribed basic penalties, sentencing should be tailored to the individual defendant. It does not render the scheme unconstitutional.

■ The next assertion, that the trial court had a duty to instruct the jury about the alternatives in sentencing provided by the new statute because the statute was ameliorative, cannot be sustained.

Stuck urges us to adopt language of the Court of Appeals in *Wolfe v. State*, (1977) 173 Ind.App. 27, 362 N.E.2d 188; and *Dowdell v. State*, (1975) 166 Ind.App. 395, 336 N.E.2d 699, which he interprets as requiring a defendant to be sentenced under the provisions of a sentencing statute which becomes effective after the date of the commission of the crime charged but before the time of conviction, if the Legislature has expressed an intention to reduce the severity of the penalty.

We are precluded from adopting this approach by the language of § 2, Acts of 1969, ch. 95 (Ind.Code § 35–1–54–2, 1971, repealed):

"This amendment shall not affect any prosecutions pending or offenses heretofore committed under existing laws and such prosecutions and offenses shall be continued and prosecuted to a final determination as if this act had not become law."

Stuck was properly sentenced under the law in effect at the time the crime was committed. There was no error here.

The final assertion under this point is that the 1969 amendment referred to above made sentencing the responsibility of the jury, and therefore the trial judge erred in assessing the sentence. Since the 1969 amendment was not applicable to appellant, as discussed in the preceding paragraph, this claim is without merit and there was no error on this issue.

### III.

Stuck next asserts that the trial court erred in concluding that he failed to prove his allegation that his conviction was based on false testimony of his accomplice, McClure. There is nothing in the record that supports Stuck's belief that McClure testified in return for being indicted only for theft. Stuck was asked whether he had any proof that a deal had been made. He replied: "The only proof I had at the time was that my wife came to Pendleton [prison] and told me that her Dad had turned State's evidence on me." In short, his "proof" that McClure testified falsely is an inference, from his belief that McClure was offered a deal, that he must have lied. There was, however, testimony from other witnesses that McClure was never offered a deal. The court did not err in concluding that the allegation was not proved.

### IV.

Finally, Stuck asserts that the trial court erred in concluding that he did not prove his allegation of ineffective assistance of counsel. He urges us to abandon the "mockery of justice" standard as it has been modified by the "adequate legal representation" standard of review on the issue of effective representation that is set forth in *Smith v. State*, (1979) Ind., 396 N.E.2d 898, and *Line v. State*, (1979) Ind., 397 N.E.2d 975, because it is an unrealistically heavy burden for a defendant. The sole specific claim of ineffectiveness is that trial counsel failed to investigate thoroughly the facts and circumstances surrounding the testimony of the accomplice, McClure.

Stuck's brief quotes McClure's trial testimony which was that while both men were in Hamilton County Jail Stuck told him that he shot Westfield Town Marshall David Brown. The trial attorney testified that he did not investigate the possibility that a bargain might have been made by the prosecutor with McClure for his testimony against Stuck. Since there is no evidence that there was a bargain, we cannot say that the trial attorney's failure to investigate prejudiced his client. The trial court did not err in concluding that this allegation was not proved.

The judgment of the trial court is affirmed.

GIVAN, C. J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.